**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ESTATE OF JANE ORISTANO, by its Executor Ellen Tuchman, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No.: N23C-04-258 EMD CCLD |
| v. | ) ) ) | |
| AVMONT, LLC and WESTGATE DELAWARE LLC, | ) ) ) | |
| Defendants. | ) | |

Submitted: May 22, 2024
Decided: August 20, 2024

*Upon Consideration of Motion of Defendant Westgate Delaware LLC to Dismiss Plaintiff's Second Amended Complaint*
***DENIED***

Donald L. Gouge, Jr., Esquire, Donald L. Gouge, Jr., LLC, Wilmington, Delaware, Michael Miller, Esquire, Gregory Star, Esquire, Nicolas Novy, Cozen O'Connor, P.C., Philadelphia, Pennsylvania. *Attorneys for Plaintiff Estate of Jane Oristano, by its Executor Ellen Tuchman.*

Tiffany Geyer Lydon, Esquire, Ashby & Geddes, Wilmington Delaware, Randy Duncan, Esquire, McDowell Hetherington LLP, Houston, Texas. *Attorneys for Defendant Westgate Delaware LLC.*

**DAVIS, J.**

## I. INTRODUCTION

This is a civil action filed before the Complex Commercial Litigation Division of this Court. Plaintiff, Estate of Jane Oristano, by its Executor Ellen Tuchman, (the "Estate"), filed a Second Amended Complaint ("SAC") with the Court on October 17, 2023, against Defendants, Avmont, LLC ("Avmont"), and Westgate Delaware, LLC ("Westgate").[1] The Estate claims that at the time of Mrs. Oristano's death, Westgate was the owner and beneficiary of a stranger-

---

[1] Second Amended Complaint (hereinafter "SAC") (D.I. No. 32).

originated life insurance ("STOLI") policy in Mrs. Oristano's life ("the Policy") in violation of 18 Del. C. § 2704.[2] The Estate requests payment of the Policy's proceeds, believed to exceed $27,000,000, plus applicable interest, attorneys' fees, and other costs and damages.[3]

Before this Court is Defendant Westgate's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion"), filed December 20, 2023.[4] Westgate argues that the Estate's claim is time-barred by a three-year statute of limitations.[5] Westgate also contends that the Estate's allegations against Westgate do not invoke the relation-back rule under Superior Court Civil Rule 15(b)(3).[6]

For the reasons stated below, the Court **DENIES** the Motion.

## II. RELEVANT FACTS

### A. COVENTRY STOLI POLICIES

Coventry was a "family of interrelated Delaware entities . . . which operated a large Delaware-centered STOLI program that generated thousands of policies on the lives of senior citizens across the United States."[7] Coventry—an example of an entity known in the STOLI industry as a "funder"—worked with a nationwide network of insurance producers who acted as policy funders' agents.[8] The agents identified senior citizens who fit the funders' investment criteria and influenced those seniors to enter into the STOLI transactions.[9] The transactions were

---

[2] *Id.* ¶ 12.
[3] *Id.* ¶ 14.
[4] Defendant Westgate Delaware LLC's Motion to Dismiss (hereinafter "MTD") (D.I. No. 44).
[5] *Id.*
[6] *Id.*
[7] SAC ¶ 17.
[8] *Id.* ¶ 18.
[9] *Id.*

presented to selected senior citizens under the guise of being a "good deal."[10] Each transaction was "procured and paid for by third parties without an insurable interest in the insureds."[11]

Starting in 2001, Coventry, U.S. Bank, National Association ("U.S. Bank"), Wells Fargo Bank, National Association ("Wells Fargo"), and Lavastone Capital LLC, f/k/a/ AIG Life Settlements LLC ("Lavastone") entered into a series of requirements contracts.[12] Through these agreements, Coventry agreed to "originate" Delaware life insurance policies that were intended "from the start" to be transferred to Lavastone and other investors.[13] U.S. Bank would serve in various roles, such as trustee, fiscal agent, and/or securities intermediary.[14] In 2008, Coventry, Wells Fargo, and Lavastone entered into more agreements, this time with Wells Fargo serving in the above-mentioned roles.[15] In both sets of contracts, Coventry was the "Originator" and obligated to create "large numbers of life insurance policies that…Lavastone was required to purchase from Coventry."[16] Lavastone's purchases of the policies were to be facilitated by either Wells Fargo or U.S. Bank.[17]

To conduct these transactions, Coventry "located senior citizens to serve as the insured."[18] Before applying for a policy, Coventry obtained life expectancy reports on each potentially insured individual as well as a Special Irrevocable Durable Power of Attorney for each potentially insured individual.[19] Coventry used the information in the life expectancy reports to project how profitable a potential policy might be to Coventry and its cohorts.[20] If a

---

[10] *Id.* ¶ 19.
[11] *Id.* ¶ 20.
[12] *Id.* ¶ 24.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* ¶ 25.
[17] *Id.*
[18] *Id.* ¶ 26.
[19] *Id.* ¶ 28, 29.
[20] *Id.* ¶ 30.

favorable determination was made, Coventry dictated the terms of the policy and started the application process with the assistance of local insurance brokers.[21]

## B. PROCUREMENT OF MRS. ORISTANO'S LIFE INSURANCE POLICY

In or around 2005, PHL Variable Insurance Company ("PHL") received an application seeking a universal life insurance policy on the life of Mrs. Oristano.[22] At this time, Mrs. Oristano was seventy years old.[23] The application listed the owner and beneficiary of the proposed policy as the Oristano Life Insurance Trust (the "Trust").[24] A financial officer for the Wilmington Trust Company signed the application as the trustee of the Trust and owner and beneficiary of the proposed policy.[25] PHL issued the Policy based on the information contained in the application.[26] The Policy was purportedly procured "as an illegal wager on the life of [Mrs. Oristano] as part of a STOLI scheme and in violation of, among other things, Delaware's . . . prohibitions on wagering."[27]

On January 20, 2020, Mrs. Oristano passed away.[28] Westgate, on behalf of itself or Avmont, then submitted a claim for the Policy's death benefit to PHL.[29] Brian Barclay, as agent for Westgate or Avmont, provided documentation to PHL in support of Westgate's claim.[30] On or about June 3, 2020, PHL paid the Policy's $27,301,939.52 death benefit to Westgate.[31] Westgate received the Policy's death benefit proceeds on behalf of itself or Avmont. [32]

---

[21] *Id.* ¶ 31.
[22] SAC ¶ 53.
[23] *Id.*
[24] *Id.* ¶ 54.
[25] *Id.* ¶ 56.
[26] *Id.* ¶ 57.
[27] *Id.* ¶ 59.
[28] *Id.* ¶ 76.
[29] *Id.* ¶ 77.
[30] *Id.* ¶ 78.
[31] *Id.* ¶ 79.
[32] *Id.*

The Estate was opened on March 3, 2020.[33]  Ellen Tuchman is the executor of the Estate.[34]

### C. CURRENT LITIGATION

On April 28, 2023, the Estate filed its Complaint against Vida Capital Inc., Vida Capital, LLC, Obra Capital, Inc., Vida Management I, LLC, Vida Capital Management, LLC, Vida Longevity Fund, L.P., Vicoff II Trust, and Vicoff III Trust.[35]  On May 1, 2023, the Estate filed its First Amended Complaint pursuant to Civil Rule 15(a).[36]  The Estate added Avmont as a named defendant in the action.[37]

On August 23, 2023, the Estate filed its Motion for Leave to File a Second Amended Complaint pursuant to Superior Court Civil Rule 15(a).[38]  On October 6, 2023, the Estate filed its Second Motion for Leave to File a Second Amended Complaint to name Westgate as a defendant in the action and "to no longer state claims against the various Vida/Orba entities . . . ."[39]  On October 17, 2023, this Court granted the Estate's Second Motion for Leave without a hearing.[40] On the same day, the Estate filed the SAC against Avmont and Westgate.[41]

On December 20, 2023, Westgate filed the instant Motion.[42]  On February 5, 2024, the Estate filed its Response in Opposition to Westgate's Motion to Dismiss.[43]  On February 19,

---

[33] *Id.* ¶ 82.
[34] *Id.*
[35] D.I. No. 1.
[36] D.I. No. 2.
[37] *Id.*
[38] D.I. No. 24.
[39] D.I. No. 27.
[40] *See* Order to Plaintiff's Second Motion for Leave,(D.I. No. 31) ("noting that the Estate's counsel represented in a letter that 'all adverse parties that have joined this civil action (i.e., have filed responsive pleadings) have consented to the relief in the motion.'").
[41] D.I. No. 32.
[42] D.I. No. 44.
[43] Plaintiff's Response in Opposition to Westgate's Motion to Dismiss (hereinafter "Opp'n") (D.I. No. 53).

2024, Westgate filed its Reply Brief in Support of the Motion.[44]  The Court held a hearing on the Motion on May 22, 2024.[45]  At the conclusion of the hearing, the Court took the Motion under advisement.

### III.    PARTIES' CONTENTIONS

#### A.  THE MOTION

Westgate contends that the Estate's claim is barred by the applicable statute of limitations.  Westgate argues that 18 *Del. C.* § 2704(b) and 10 *Del. C.* § 8106(a) control and that the Estate had three years from June 3, 2020 to bring claims against Westgate.  Westgate also maintains that Civil Rule 15(c)'s relation back rule does not apply in this situation to preserve the Estate's claim.

#### B.  THE OPPOSITION

The Estate opposes the Motion.  First, the Estate argues that no statute of limitations applies because Westgate cannot avail itself of any defenses when a void STOLI policy is at issue.  Because STOLI policies are void *ab initio* and violate public policy, these policies represent a fraud on the Court and cannot be enforced.  Second, the Estate contends that its claim against Westgate is timely as it relates back to the Amended Complaint and the Complaint under Civil Rule 15(c).

### IV.    STANDARD OF REVIEW

Upon a motion to dismiss, the Court (1) accepts all well-pled factual allegations as true, (2) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (3) draws all reasonable inferences in favor of the non-moving party, and (4) only

---

[44] Westgate's Reply Brief in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint (hereinafter "Reply") (D.I. No. 55).
[45] D.I. No. 64.

6

dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[46] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[47]

## V. DISCUSSION

The Court finds that Civil Rule 15(c) applies and the Estate's claim against Westgate relates back and is not barred by any applicable statute of limitations. The Court will not, therefore, address the alternative argument that limitations periods do not apply to bar litigation based on STOLI policies.[48]

Civil Rule 15 provides that it is within the Court's discretion to grant or deny an amendment to a complaint; however, "the Rule directs the liberal granting of amendments 'when justice so requires.'"[49] "In the absence of prejudice to another party, the trial court is required to exercise its discretion in favor of granting leave to amend."[50]

Civil Rule 15(c)(3) provides:

> (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when ... (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by statute or these Rules for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[51]

---

[46] See *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, 2010 WL 5825353, at *3 (Del. Super. Oct. 27, 2010).
[47] *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).
[48] If the Court did address this issue, however, the Court would follow the reasoning in *Daher v. LSH Co.*, 2023 WL 4317029, at *2-3 (C.D. Cal. June 13, 2023). Under *Daher*, the Court would determine that the STOLI claim is not subject to 10 *Del. C.* § 8106 and that only the doctrine of laches could serve to block the Estate's claim against Westgate. Here, the Estate has not engaged in great and unreasonable delay and Westgate has provided no viable laches argument. Accordingly, an alternative ground exists for this litigation to proceed against Westgate.
[49] *Dobson v. McKinley*, 2009 WL 891056, at *3 (Del. Super. Mar. 31, 2009).
[50] *Id.*
[51] Super. Ct. Civ. R. 15(c)(3).

Under Civil Rule 15(c)(3), an amendment can only relate back if it satisfies the three conditions set forth therein:

First, the claim asserted by the amendment must arise out of the same conduct, transaction, or occurrence asserted in the original pleading. Second, within the time provided by the rules, the party to be added must have received notice of the institution of the action, so that the party will not be prejudiced. Third, within the time provided by the rules, the party to be added must have known or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be added by the amendment.[52]

The only condition at issue in the case at bar is the second requirement of notice. The "such notice" requirement is not notice of the incident giving rise to the cause of action, but is rather notice of the pending lawsuit itself.[53] This notice can be either formal or informal; "service of process is not mandated, and [such notice] may not even have to be in writing."[54]

However, the party against whom the claim is filed must have received "such notice of the institution of the action" within the time period set forth by either the statute of limitations or Civil Rule 4(j).[55] Civil Rule 4(j) provides the time period in which a party must be served with process after the filing of a complaint.[56] Interpreting the two rules in conjunction, Civil Rules 15(c)(3) and 4(j) provide that a new party named in the amended complaint must receive notice of the institution of the lawsuit within either the period set forth in the statute of limitations or, if the statute of limitations has since

---

[52] *Taylor v. Champion*, 693 A.2d 1072, 1074 (Del. 1997).
[53] *Mergenthaler, Inc. v. Jefferson*, 332 A.2d 396, 397 (Del. 1975).
[54] *Id. See also Williams v. Ward*, 553 F.Supp. 1024, 1026 (W.D.N.Y. 1983) (providing an interpretation of the Federal Rules: "The notice to the defendant does not have to be formal. It is sufficient if it puts defendant on actual or constructive knowledge that there may be a claim against him, and this knowledge is sufficient to encourage the defendant to prepare a defense.").
[55] Super. Ct. Civ. R. 15(c)(3).
[56] Super. Ct. Civ. R. 4(j).

expired, within 120 days of the institution of the action.[57]

If the statute of limitations were to apply, the Estate contends that the SAC sufficiently relates back to the FAC and Complaint because the SAC satisfies all the Rule 15(c) requirements.[58] The Court agrees and finds that Civil Rule 15(c) is satisfied here.

First, the claim for relief and the facts supporting the claim were consistent between the Complaint, the First Amended Complaint, and the SAC. The Estate seeks recovery of proceeds paid on a STOLI policy under the same theory and essentially the same facts regarding the Policy.

Second, Westgate had to be on notice of the claim within the required notice period and the statute of limitations period. Westgate knew or should have known that it was to be named as a defendant in the action. Westgate contends that the Estate chose to sue the wrong party. This does not hold true under the facts.

The Estate acted diligently but was met with obstructionist tactics.[59] PHL deliberately refused to disclose Westgate's identity during the limitations period and only revealed Westgate's identity after the period lapsed.[60] For example, the Estate sought discovery in the Massachusetts action via subpoena and letters interrogatory which was objected to by PHL's counsel on procedural grounds.[61]

---

[57] *Mergenthaler*, 332 A.2d at 398. In *Mergenthaler*, the Court found that sufficient notice was not given within the time period provided for in the statute of limitations. At the time the *Mergenthaler.* decision was written, the language of Rule 15(c) provided that the new party must have notice within the time period prescribed by the statute of limitations. In 1993, Rule 15 was amended to provide that the time period in which the parties had notice was within 120 days after the institution of the proceedings. *See Difebo v. Board of Adjustment of New Castle County*, 132 A.3d 1154, 1157 n.8 (Del. 2016).
[58] Opp'n at 21.
[59] SAC ¶¶ 100-121.
[60] *Id.* ¶¶ 107-121.
[61] *Id.* ¶¶ 103,107.

The Estate repeatedly reached out to PHL's counsel via letters and subpoenas and requested to meet and confer to identify which entity received the Policy's proceeds, expressing a willingness to work with PHL.[62] The Estate asked "point blank" why PHL could not reveal the Policy payee's identity, to which PHL responded that it could not meet and confer and needed to first discuss the matter with their client who was traveling.[63]

The Estate claims that it instituted litigation against the Vida/Obra entities because it thought that PHL likely paid the Policy's proceeds to one of those entities.[64] The Estate and PHL continued to correspond regarding expedited discovery requests and the production of documents.[65] PHL delayed its production of requested documents and only provided them to the Estate on August 7, 2023, which was outside the statute of limitations.[66] Westgate was revealed as the payee of the Policy's proceeds after the limitations period because PHL did not provide this information to the Estate despite numerous timely requests.[67]

The Court finds that these facts support the finding that Westgate, through PHL, knew or should have known that, but for PHL's actions, it would have been a party to this litigation. Westgate is not a stranger to PHL. PHL was the entity that paid the Policy's proceeds. PHL paid those proceeds directly to Westgate. With PHL directly involved in the litigation it either provided or should have provided notice to Westgate of the lawsuit. Westgate speaks of gamesmanship on the part of the Estate, but the facts suggest that PHL and Westgate likely were the parties using the legal system to delay the Estate from discovering the proper party.

---

[62] *Id.* ¶¶ 108.
[63] *Id.* ¶ 109.
[64] *Id.* ¶ 110.
[65] *Id.* ¶¶ 111-15.
[66] *Id.* ¶ 121.
[67] *Id.*

The Court finds that the record supports all elements of relation back available under Civil Rule 15(c).  Accordingly, the Motion is **DENIED**.

## VI.     CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

Dated: August 20, 2024
Wilmington, Delaware

/s/ *Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeExpress